UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARYN HERMAN, | : |
| Plaintiff, | : Civil Action No. 12-6640 (JAP) |
| v. | : **OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : |
| Defendant. | : |

PISANO, District Judge.

Plaintiff Caryn Herman ("Plaintiff") appeals the denial of her disability insurance benefits by the Acting Commissioner of Social Security, Carolyn W. Colvin (the "Commissioner" or "Defendant"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court affirms the Commissioner's final decision.

I. **Procedural History**

On April 21, 2009, Plaintiff filed an application for disability benefits with the Social Security Administration, which denied her initial request and her request for reconsideration. The Plaintiff then filed for a hearing before an Administrative Law Judge (the "ALJ"), which occurred on March 8, 2011. On March 22, 2011, the ALJ issued an opinion denying Plaintiff's request for disability benefits. Subsequently, Plaintiff sought review of the ALJ's decision by the Appeals Council. On August 29, 2012, the Appeals Court concluded that there were no

grounds for such review. Thus, the ALJ's decision became the final decision of the Commissioner of the Social Security. Thereafter, Plaintiff then instituted the present action in this Court on May 2, 2012, challenging the Commissioner's final ruling denying her claim for benefits on the grounds that the ALJ's decision was not supported by substantial evidence.

## II. Background

Plaintiff was born on March 14, 1981 in Perth Amboy, New Jersey. R. 27. Plaintiff is a high school graduate who began working for Menlo Worldwide Logistics in April 2008. She originally began working through Miller Logistics, a temp agency, but then was hired directly through the company. R. 27, 80. Plaintiff worked as an inventory clerk, and worked in the warehouse picking orders and doing inventory. R. 28, 122-23, 163. This job involved a lot of standing and walking, as well as driving machines such as forklifts, hi-lows, and other small vehicles inside the warehouse. R. 28. She would lift cement bags as much as 40-75 pounds, but would frequently lift things that weighed about 10-25 pounds. *See* R. 28, 92, 123. From about 2006 to 2007, she worked a similar job for another distribution company that eventually went out of business. R. 28, 122, 163. While working there, she was almost always standing, and mainly picked orders. R. 29. While working, she would lift and carry up to about twenty pounds, but often carried lifted up to ten pounds. R. 29, 124.

On the morning of January 8, 2009, Plaintiff was driving to work when a truck driving next to her stopped. Plaintiff wound up hitting the wheels of another truck, causing part of her car to go under the truck. R. 30. Plaintiff was taken to Robert Wood Johnson University Hospital for a concussion and scalp laceration that required staples. R. 250-64. Plaintiff then underwent several CT scans. A CT scan of her abdomen showed ovarian cysts and bilateral spondylolysis on the L5 vertebrae with minimal anterolisthesis of L5 on S1. R. 259. A CT scan

of her cervical spine showed no evidence of acute fracture or subluxation, and indicated normal cervical alignment with maintained vertebral body and disk space height. R. 257-58. A CT scan of Plaintiff's head revealed no evidence of acute intracranial injury or bony fracture, but did evidence soft issue swelling of the right face and right temporal scalp. *See* R. 167-75, 250-64.

After the accident, Plaintiff came into the care of Dr. Joseph S. Lombardi. Dr. Lombardi initially evaluated Plaintiff on January 21, 2009 for right-sided neck, mid-back, and low-back pain, as well as right knee pain and rib pain on both sides of the ribs. R. 30. Plaintiff's bilateral rib pain and lower back pain was the worst. She told Dr. Lombardi that walking, standing, bending, lying, and lifting made her back pain worse. Dr. Lombardi's examination of Plaintiff revealed moderate tenderness and stiffness, with a limited range of motion in the cervical and lumbar spine, and pain and muscle spasms. Specifically, the range of motion of the cervical spine included 35 degrees flexion with pain, 25 degrees extension with pain, and right and left lateral flexion to 25 degrees with pain. Plaintiff's range of motion of the lumbar spine included 30 degrees flexion with pain, and 10 degrees extension with pain. Plaintiff's exam also showed positive straight-leg raising with axial back pain at 45 degrees, and positive medial and lateral joint line tenderness and ecchymosis in the right knee. Dr. Lombardi diagnosed Plaintiff with lumbar sprain/strain, cervical sprain/strain and cervicalgia, closed fracture of rib fractures, internal derangement of the right knee, knee contusion on the right, a tear or sprain of the medial collateral ligament (MDL) on the right, and a left elbow contusion. R. 330-33.

Dr. Lombardi ordered a whole body bone scan for the Plaintiff, which occurred on February 6, 2009 and showed that Plaintiff had nine rib fractures. R. 336, 340. Dr. Lombardy also ordered an MRI of Plaintiff's right knee and an EMG of the bilateral lower extremities. An MRI of the lumbar spine on May 29, 2009 revealed L5-S1 anterolisthesis. Plaintiff underwent

EMG and nerve conduction studies on May 20, 2009 that revealed left S1 radiculopathy. *See* R. 348-49. On July 20, 2009, Plaintiff underwent a CT scan of the lumbar spine which confirmed lytic spondylolisthesis at the L5-S1 level with bilateral foraminal stenosis. R. 356-57, 409.

At a June 2, 2010 examination for mid-back and low back pain with bilateral leg pain with numbness, Plaintiff reported that her main problem is the numbness in her left leg. Plaintiff's range of motion of the cervical spine was now within the normal limits. Her range of motion of the lumbar spine remained the same as it did when Plaintiff first was examined by Dr. Lombardi, with a 30 degrees flexion with pain, and 10 degrees extension with pain. *See* R. 397-98. Plaintiff's results from Dr. Lombardi's examination of her on July 14, 2010 (the last recoded evidence of her examinations from Dr. Lombardi) reveal the same results from June, except that her straight leg test on the left now produced pain at 60 degrees on the left. R. 401-04.

In February 2009, Plaintiff went to Central Medical Group and met with Dr. Howard Cohen. She was placed in a holter monitor for 24 hours, which indicated some trace mitral valve regurgitation and some sinus arrhythmia. Eventually, Plaintiff was diagnosed with shortness of breath, palpitations, mitral valve disorder, chest pain, and fractured ribs. R. 239-247.

On July 29, 2009, Plaintiff underwent a consultative examination conducted by Dr. Ronald Bagner. Plaintiff complained of pain in the lower back, pain in the sternum, pain in the mid-back, and throbbing in her head from where she had stables. R. 275. The physical examination showed that Plaintiff "ambulates with an antalgic gait, gets on and off the examining table with moderate difficulty, and dressed and undressed without assistance. She is uncomfortable in the seated position during the interview, does not use a cane or crutches, and can heel and toe with moderate difficulty." R. 276. Dr. Bagner concluded that Plaintiff was suffering from lumbar radiculopathy. However, other than positive legal raising and ambulating

with an antalgic gait, the physical examination revealed no significant abnormalities. Plaintiff showed a normal flexion/extension, lateral flexion, and lateral rotation in her cervical spine. She had no motor or sensor abnormalities in her upper extremities, and showed a normal range of motion. Dr. Bagner noted that Plaintiff refused to voluntarily attempt movement of her lower back. She had no motor or sensory abnormalities in her lower extremities, and she had no muscle atrophy in her lower extremities. R. 275-76. Plaintiff underwent x-rays of her chest and thoracic spine at this time, which demonstrated that Plaintiff's chest and thoracic spine were normal. R. 279.

To treat Plaintiff's pain, Dr. Lombardi ordered physical therapy and prescribed certain pain medications. Eventually, he scheduled lumbar epidural steroid injections. R. 345, 357. Due to complications with her insurance, Plaintiff eventually began going to chiropractic care instead of physical therapy. R. 397; R. 420-439. Surgery was considered as an option, but Dr. Lombardy wanted to wait to see if Plaintiff responded to physical therapy and other conservative options first. *See* R. 404. On December 22, 2009, Plaintiff started visiting the University Medical Center at Princeton Outpatient Clinic for gastroesophageal reflux, back pain, anxiety, and a rash. R. 462. Plaintiff was eventually placed on Prozac for her anxiety issues. R. 444.

### III. Standard of Review

A reviewing court must uphold the Commissioner's factual determinations if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g); 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. . .but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs*, 859 F.2d 1156, 1159 (3d Cir. 1988). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person

5

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F. 2d 1211, 1213 (3d Cir. 1988).

On review, a court must read the evidence in its entirety, "tak[ing] into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotation omitted). In order for the reviewing court to determine if the administrative decision is based on substantial evidence, the ALJ must provide "some explanation…when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). A court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). A court, however, cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

## IV. APPLICABLE LAW

### 1. The Five-Step Analysis for Determining Disability

To be eligible for disability insurance benefits ("DIB"), a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled for these purposes only if his physical and mental impairments are "of such severity that he is not only unable to do his previous work, but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established a five-step process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish both (1) that she has not engaged in "substantial gainful activity" (SGA) since the onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(b)-(c). Because the claimant bears the burden of establishing these two requirements, a failure to meet this burden automatically results in the denial of benefits, ending the court's inquiry. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987) (delineating the burdens of proof at each step of the disability determination); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). These first two steps "involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work." *Williams*, 970 F.2d at 1180.

In the third step, the medical evidence of the claimant's impairment compared to a list of impairments presumed severe enough to preclude gainful work. 20 C.F.R. § 404.1520(d). If the claimant's impairment either matches or is equal to one of the listed impairments, he qualifies for benefits. Conversely, "[i]f a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four and five." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

If the claimant does not have a listed impairment, the Commissioner will evaluate and make a finding about the claimant's Residual Functioning Capacity ("RFC") before proceeding onto the fourth stage. 20 C.F.R. § 404.1520(a)(4), (e). A claimant's RCF is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). "In

making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

At the fourth step of the analysis, the Commissioner must analyze whether the claimant's RCF sufficiently permits her to resume her past relevant work. 20 C.F.R. § 404.1520(e)-(f). The burden remains on the claimant to show that she is unable to perform her past work. *See Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). If the claimant is capable of returning to her previous line of work, she is not "disabled" and the inquiry goes no further.

If, however, the claimant is unable to return to her former occupation, the evaluation moves to the fifth and final step. At this stage, the burden shifts to the Commissioner, who now must demonstrate that the claimant is capable of performing other substantial, gainful work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and RFC. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. *See* 20 C.F.R. § 404.1523. If the Commissioner cannot satisfy this burden, then the plaintiff is entitled to disability benefits. *Yuckert*, 428 U.S. at 146-47 n.5.

### 2. The Record Must Provide Objective Medical Evidence

Under Title II of the Social Security Act, a claimant is required to provide objective medical evidence in order to prove his disability. *See* 42 U.S.C. § 423(d)(5)(A). Consequently,

a plaintiff cannot prove that she is disabled based on solely her subjective complaints of pain and other symptoms. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984). ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."). Rather, a plaintiff must provide medical findings that show that she has a medically determinable impairment. 42 U.S.C. §§ 423(d)(1)(A); *Green*, 749 F.2d at 1069-70.

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). *See Hartranft*, 181 F.3d at 362 (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ had made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work). While complaints of pain must be considered in addition to objective facts and medical opinions, complaints that are disproportionate to the medical evidence may be deemed not credible. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974); *Hartranft*, 181 F.3d at 362.

## V.  THE ALJ'S DECISION

On March 8, 2011, a hearing was held before ALJ Richard L. DeSteno, at which Plaintiff testified. R. 13. In a written opinion dated March 22, 2011, the ALJ applied the five-step analysis to the facts from the record and determined that Plaintiff was not entitled to disability insurance benefits because the Plaintiff had not been under a disability from January 8, 2009

9

through the date of the opinion. The ALJ found that Plaintiff satisfied the first step of the analysis because she had not engaged in substantial gainful activity since January 8, 2009, the alleged onset date. Moving to step two, the ALJ concluded Plaintiff had satisfactorily showed a severe impairment involving spondylolithesis of the lumbar spine with lumbar strain and foraminal stenosis. The ALJ noted that Plaintiff claimed to suffer from depression, irritable bowel syndrome, and severe impairments affecting her feet and knees, but concluded that the objective medial evidence "does not substantiate that any of these conditions resulted in greater than slight or minimal limitations in performing basic work activities." R. 15.

At step three, the ALJ concluded that Plaintiff's impairment did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ compared Plaintiff's spondylolithesis to Section 1.04—disorders of the spine. The ALJ found that Plaintiff's condition did not meet the listing because "the evidence does not demonstrate 'herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord' along with the requirements in subsections A, B, or C." R. 15.

Before reaching step four, the ALJ concluded that Plaintiff has the residual functional capacity for lifting and carrying objects weighing up to 10 pounds, sitting for up to six hours, and standing and walking for up to two hours in an eight-hour day. The ALJ further concluded that the Plaintiff has the residual functional capacity to perform a full range of sedentary work. R. 15. The ALJ found that the claimant had no significant non-exceptional limitations. Specifically, the ALJ determined, after reviewing all of the evidence in the record, that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent that they are inconsistent with the above residual functional assessment." The ALJ found that the subjective complaints of pain by Plaintiff were not supported by the objective clinical and diagnostic test findings, which "chronicled only slightly-diminished limitations of motion, tenderness and muscle spasm in the cervical and lumbar spine, and mild sensory deficits with good motor strength in all extremities." R. 18. There was also no muscle atrophy, or motor or sensory abnormality in the lower extremities, or any significant spinal canal stenosis, neural foraminal stenosis, and no evidence of cord compression or impingement. *Id.* The ALJ stressed that that Plaintiff was treated with conservative methods, and that clinical examinations have not shown any deterioration in her condition. *Id.*

In analyzing step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a general warehouse worker and a magazine picker because she is limited to sedentary exertional work. *Id.* Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that jobs existed in significant numbers in the national economy that Plaintiff can perform. Therefore, based on the RFC for the full range of sedentary work, and considering her age, education, and work experience, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from January 8, 2009 through the date of his decision. *Id.* at 19.

## VI. DISCUSSION

Plaintiff raises several challenges to the ALJ's decision. First, she argues that the ALJ did not properly evaluate the medical evidence because: (1) the ALJ failed to give proper credence to the Plaintiff's subjective complaints of pain or mental impairments, Pl.'s Br. 13; and (2) the ALJ improperly ignored medical evidence indicating muscle weakness and a worsening

11

of Plaintiff's condition, *id*. at 14. Plaintiff further argues that the ALJ's conclusion regarding Plaintiff's RFC was not supported by substantial evidence because the ALJ did not evaluate all relevant evidence and did not explain his assessment of the credibility of the medical evidence that contradicted his residual functional capacity finding. *Id.* at 15-16, 18.

    **1.    The ALJ Properly Evaluated the Medical Evidence**

        *A.    Substantial Evidence Supports the ALJ's Findings as to Plaintiff's Subjective Complaints*

After conducting a thorough review of the medical evidence of record, R. 13-20, the ALJ concluded that although Plaintiff's medically-determinable impairments could reasonably produce the symptoms she complained of, her statements regarding "the intensity, persistence and limiting effects of her symptoms" were not entirely credible because they were not consistent with the objective medical evidence. R. 18. Plaintiff contends the ALJ erred in so finding because he did not give "proper credence" to her complaints of "chronic and severe pain, numbness and limitation of motion and function, anxiety, headaches and chest pain and shortness of breath." Pl.'s Br. 13. Plaintiff also contends that the ALJ failed to take into account Plaintiff's medications as support for her allegations. *Id.* at 17.

Plaintiff argues that the ALJ failed to give proper credence to Plaintiff's anxiety, headaches, and chest pain/shortness of breath. Pl.'s Br. 13. However, the ALJ referenced head and chest CT scans, which showed no abnormalities. The ALJ also referenced a whole body scan that evidenced rib fractures. The ALJ also considered the headaches Plaintiff reported to her doctors. The ALJ also noted that Plaintiff complained of anxiety and took Prozac. *See* R. 16-18. In making his conclusions, the ALJ specifically stated that he considered all the evidence

12

when making his determination. R. 18. Therefore, Plaintiff did properly consider these mental impairments.[1]

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). Complaints that are disproportionate with the medical evidence may be deemed not credible. *Baerga*, 500 F.2d at 312; *Hartranft*, 181 F.3d at 362. Here, the ALJ concluded that Plaintiff had a discernible medical condition that could reasonably cause the pain she complained of. However, the ALJ thought that Plaintiff's testimony about the extent of her pain was exaggerated, and that Plaintiff could perform sedentary work despite her significant complaints of pain. That ruling is clearly supported by substantial evidence in this record. The ALJ cited specific instances where Plaintiff's complaints about pain and other subjective symptoms were inconsistent with the objective clinical and diagnostic test findings.

For example, the CT scans taken of Plaintiff's head and cervical spine were normal immediately after her accident, and later x-rays of her thoracic spine and chest were also normal. *See* R. 279; R. 250-64. While early CT scans and later MRI studies of the lumbar spine confirmed lytic spondylolisthesis with bilateral foraminal stenosis, there has been no evidence of significant cord compression or impingement. R. 407-09, 417. A bone scan after the accident did confirm nine fractured ribs, but there is no indication from the record that the fractures did not heal. R. 168, 340.

The ALJ also referenced both Plaintiff's treating orthopedist, Dr. Lombardi, and the consulting examiner, Dr. Bagner. Dr. Lombardi reported that Plaintiff's gait examination was without abnormalities, and that Plaintiff had a full range of extremity motion, had full or near full

---

[1] It also should be noted that the citations that Plaintiff has provided for these impairments fails to show that they would be considered "disabling" because none of these impairments lasted continuously for twelve months. *See* 20 C.F.R. § 404.1509.

13

strength (ranging from 4-5/5), and had mostly intact sensation. *See* R. 347-48, 355-56, 362-63, 366-67, 374-75, 380-81, 388-89, 393-94, 398-99, 402-03. Dr. Bagner, a consultative examiner, recorded that Plaintiff did not use a cane or crutches to walk, could dress and undress independently, and had a normal range of motion, reflexes, sensations, and strength. R. 276-78. Plaintiff could also squat and walk on her heels and toes, albeit with some difficulty. R. 278. Dr. Bagner noted positive straight leg raising in the supine position by Plaintiff, but this result was not reproduced when Plaintiff was seated.[2] *Id.*

The ALJ also emphasized the conservative methods by which Plaintiff was treated. The record evidences treatment of pain medications, injections, and chiropractic treatment. R. 358-60, 368-72, 382-86, 396, 420-39. The record also evidences that some of these treatments appeared to help Plaintiff. While there is no record of Plaintiff's physical therapy, she allegedly went through at least some physical therapy sessions. While Dr. Lombardi considered surgery if other conservative treatments did not work, Plaintiff never underwent surgery.

Contrary to Plaintiff's argument, the ALJ did not disregard Plaintiff's the fact that Plaintiff took various medications in determining that her complaints of pain were not entirely credible. See Pl.'s Br. 17. The ALJ discussed the medications Plaintiff was taking in his decision. R. 17-18. Throughout his decision, the ALJ clearly considered and put significant import to all of the treatment received by Plaintiff, including her injections, physical therapy, chiropractic treatment and medications. *Id.*

Therefore, Plaintiff's argument that the ALJ did not articulate an appropriate rational for rejecting her testimony fails. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the relatively minimal

---

[2] Plaintiff also argues that the ALJ failed to consider all of Dr. Bagner's positive findings. *See* Pl.'s Br. 13. Plaintiff, however, extracts one sentence from the ALJ's decision and fails to note that the ALJ explicitly stated the full extent of the positive findings from Dr. Bagner's examination. *See* R. 17.

clinical findings and her conservative treatment. While Plaintiff argues that the ALJ should have been bound to find her credible because her treating doctors reported her symptoms to be credible, Plaintiff has failed to show any evidence in which any doctor made a credibility judgment regarding her allegations of pain. Furthermore, the ALJ did accept Plaintiff's claims of pain, but only rejected her claims regarding the degree to which this pain limited her. *See* R. 15, 18. An ALJ can exercise his discretion when evaluating "the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988). The ALJ properly did so here.

### B. *The ALJ Properly Found No Evidence of Any Deterioration in Plaintiff's Condition*

Plaintiff argues that substantial evidence does not support the ALJ's finding that "[d]espite her complaints of increased pain and symptomatology, physical examinations have not shown any clinical evidence of any deterioration of [Plaintiff's] condition." R. 17-18. Specifically, Plaintiff argues that Dr. Lombardi's examinations of Plaintiff "have showed the muscle weakness and a worsening of her condition which the Administrative Law Judge states is missing from the record." Pl.'s Br. 14. To prove this point, Plaintiff points to certain language in one of Dr. Lombardi's most recent notes. *Id.* Plaintiff's argument, however, is misplaced. Plaintiff's argument cites to her own self-reported symptoms of pain and Dr. Lombardi's speculation regarding possible future treatment options. The ALJ emphasized that the *physical examinations* of Plaintiff by Dr. Lombardi did not show any deterioration of her condition. The record substantiates this finding by the ALJ, as a review of the first few and last few of Dr. Lombardi's findings from his examinations of Plaintiff show almost no significant changes. In

15

fact, the last few examinations show improvements in Plaintiff's range of motion of the cervical spine, which now was within the normal limits and on her straight leg raising tests. *Compare* R. 397-98, 401-04 *with* R. 330-33. Accordingly, the ALJ's determination that the Plaintiff's condition had not deteriorated is supported by substantial evidence.

        C.      *There is Substantial Evidence to Support the ALJ's Residual Functional Capacity Determination*

Plaintiff argues that the ALJ's decision regarding her residual functional capacity was not supported by the medical evidence. Pl.'s Br. 16, 18. When determining an individual's residual functioning capacity, the ALJ must consider all relevant and medical evidence. 20 C.F.R. §404.1545(a)(3). Here, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff retained the RFC was a full range of sedentary work.

Plaintiff argues that there is "no objective medical findings to support the Administrative Law Judge's feeling that the plaintiff was able to perform sedentary work" and that the ALJ substituted his opinion for that of a medical expert by relying on "isolated statements from a doctor's report while ignoring the remainder of the report supporting plaintiff's disability." Pl.'s Br. 15. A review of the ALJ's decision shows this to be a meritless argument. The ALJ's determination was not based upon a "feeling"; rather, the ALJ did a thorough review and comprehensive analysis of the record. *See* R. 16-18. The ALJ cited both diagnostic and clinical findings, stressing the findings of good motor strength with no muscle atrophy or motor or sensory abnormality, and only slightly-diminished limitation of motion by Plaintiff. *See* R. 18. Furthermore, the ALJ relied in large part, although not entirely, on an assessment done by Dr. Isabella Rampello, M.D. R. 280-87. Dr. Rampello assessed Plaintiff's functional abilities and concluded Plaintiff was capable of sedentary work within the normal confines of the workplace.

16

R. 287.  Pursuant to the relevant regulations, state agency medical consultants are "highly qualified physicians…who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i).  Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. § 416.927(f)(2)(ii).

During the RFC stage of these proceedings, the claimant carries the dual burdens of production of evidence and persuasion of what the evidence shows.  *See Yuckert*, 482 U.S. at 146 n.5.  Plaintiff, however, fails to point to any legal or medical authority for her proposition that the medical record is inconsistent with sedentary work.  As discussed, the only doctor to render a functional assessment of Plaintiff was Dr. Rampello.  Plaintiff has provided no contrary findings.  Plaintiff argues that the ALJ's finding regarding the RFC is "contrary to the opinions of the treating and examining physicians who found restrictions in the plaintiff's ability to walk, stand, bend, lie down and lift without increased pain."  Pl.'s Br. 18.  Plaintiff, however, only cites to her own statements of pain from the notes of Dr. Lombardi for this assertion.  *See* Pl.'s Br. 18 (citing R.191).  Plaintiff further asserts that the ALJ disregarded the findings of Dr. Bagner that described Plaintiff as being uncomfortable while sitting.  *Id.* (citing R. 274-79).  The ALJ, however, discussed the findings of Dr. Bagner in their entirety.  *See* R. 17-18.  Therefore, there is substantial evidence to support the ALJ's RFC finding.

Plaintiff also argues that the ALJ failed to explain his assessment of the credibility of the medical evidence and opinions from Plaintiff's treating doctors which contradicted the RCF. Pl's Br. 16.  Plaintiff, however, fails to identify any conflicting medical opinions in the record. The only doctor who assessed Plaintiff's functionality was Dr. Rampello, and her assessment provided for limitation consistent with sedentary work.  *See* R. 287.  In fact, in making his RFC

determinations, the ALJ cited extensively to Dr. Lombardi's examinations. *See* R. 17-18. An ALJ "must adequately explain his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). However,

> [h]ere, there is no conflict in the evidence that would require the administrative law judge to explain why he was accepting certain evidence and rejecting other evidence. To the contrary, the administrative law judge's opinion appropriately discussed the sequential evaluation process. The administrative law judge examined the various medical opinions and used the information and evidence presented therein to support his conclusions. He thus considered all the relevant medical sources in the record.

*Wisniewski v. Comm'r of Soc. Sec.*, 210 F. App'x. 177, 179 (3d Cir. 2006). Thus, because the record lacks any evidence that contradicts the RCF, the ALJ's assessment of the medical evidence was proper.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff is not disabled. Therefore, the final decision of the Commissioner is affirmed. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: December 31, 2013